# APRIL TERM, 1901.

VILLAGE OF RED JACKET *v.* PINTON.[1]

ADVERSE POSSESSION — STREET LINE — EVIDENCE — CONSTRUCTIVE NOTICE.

When defendant purchased his lot, in 1873, a fence ran a zigzag course in front of the lot, and encroached on the street line. The street was a mere roadway, such as a small population and primitive surroundings required, and apparently it was not considered necessary that any proprietor should fence with regard to the line. In 1890 defendant moved a building onto the lot, and located it so that it encroached on the street. At various times he admitted the encroachment, and said he would move the building back when his neighbors should move theirs. In 1896 he built the wall of a new building flush with the old, but, on being informed of the true line, and ordered to tear down the wall, did so, and placed it on the true line. In 1898 the old building burned, and his attempt to rebuild on the same line was sought to be enjoined by the village. *Held,* that defendant's possession was not of such character, and under such circumstances, as would warrant the conclusion that the village authorities had notice of a claim of adverse possession, and acquiesced therein.

Appeal from Houghton; Haire, J., presiding. Submitted November 13, 1900. Decided April 2, 1901.

Bill by the village of Red Jacket against Joseph Pinton to restrain the erection of a building encroaching upon the street. From a decree dismissing the bill, complainant appeals. Reversed.

*W. J. McDonald* (*J. T. Finnegan,* of counsel), for complainant.

*Dunstan & Hanchette,* for defendant.

[1] Rehearing denied July 19, 1901.

HOOKER, J.   Pine street, in the village of Red Jacket, runs east and west, and the defendant's premises lie upon the south side of the street.   In 1890, after occupation of 23 years, the defendant erected a foundation wall and building, which are shown by the proof to encroach about six feet upon the street.   In 1898 or 1899 this building was partially destroyed by fire, and the bill in this cause was filed by the village authorities to restrain the defendant from rebuilding it, or any portion of it, upon the land within the street line as surveyed.   The defendant relies upon title by adverse possession, and the learned circuit judge, being of the opinion that he had established that defense, decreed that the injunction be dissolved, with costs to be taxed, and that he recover against the complainant the amount of damages sustained by reason of the wrongful suing out of the injunction, and that it be referred to a commissioner to take proofs relative to said damages, and report the same, with his conclusions, to the court.

It is conceded that the defendant's building encroaches upon Pine street 5.16 feet at one corner and 2.78 feet at the other corner.   Defendant's former building was erected in 1890.   Prior to that no other building was upon it, except an old log cabin.   This cabin was built by a squatter, and either he or some one else—it does not appear who—built a fence around it.   The place was new, and the street full of stumps.   Defendant testified, "Between my house and the center of this road the condition of the land was rough, with stumps."   It is evident that no one paid any particular attention to the true boundaries of the street in building their fences.   As is common in new places, each one put up his fence as he chose, according to the size of the garden lot he wished to have.   This fence was not regular, but zigzag in shape. One Willmes, a witness for the defendant, testified that "twenty-two years ago the fences were zigzag all over." Another witness testified that "twenty-three or twenty-four years ago the fence was an old one, made out of

boards and logs, so low that a man could step over it easily." No one who had built a fence or building into the street built it upon the same line; some being in the street farther than others, while still others built inside the correct line. Defendant did not know whether the fence was on the line, and did not concern himself about it. There is no reason for his belief that it was a line fence, and I think it evident that he had none. In 1896 he began to lay the foundation for a blacksmith shop on the line of the other building, which he moved upon the land in 1890. The village authorities notified him that it encroached upon the street, and showed him where the true line was. He evidently recognized the correctness of the line as then pointed out to him, complied with the notice of the authorities, and placed the front wall of his shop on the true line. A witness who occupied the lot in 1873, and who sold the house standing thereon to defendant, testified:

" In 1873 there was an old fence, made out of brush, boards, and rails, in front of that property bordering the street. * * * I have no knowledge myself of how that fence came there at all. It was a fence all along there. Some was in and some out; a kind of zigzag fence. The country was rather new there at that time. There was a street there right in the middle; that is all; and grass all around. There was some sidewalks in front of some of the properties. They put them there themselves; but there was no sidewalk in front of that lot. The street was simply used in the middle for teams to pass up and down. * * * The house that I bought stood back on the lot over 15 feet from the roadway. It was a little shanty."

There was other testimony of a similar character.

When defendant's building was destroyed by fire, and he was rebuilding, the village authorities notified him to place his new building upon the line. Upon his refusal this bill was filed to enjoin the encroachment upon the street. Defendant recognized that he encroached upon the street, and said that his neighbors were on the street just as much as he was. It is in evidence that there was a

general understanding between those whose buildings encroached upon the street and the authorities that when they rebuilt they should build upon the true line.   In 1893 defendant admitted to a member of the street committee, Mr. Johnson, that his building was over the line, and said he would move it back when the rest did.

I think this is a case where those settling upon the street at an early day built their buildings and their fences without any regard to the line, or without any right to believe that they were within the line of the street. There was then only such a roadway as the scarcity of population and primitive surroundings required.   Neither the public authorities nor the lot owners considered it necessary that the fences erected should be upon the line, and each was left to build as he chose.   It is evident from this record that, as soon as it became necessary to raise the question, all those residing upon the street, who had built regardless of the true line, recognized the correct line, and were permitted to retain possession of their encroachments until they rebuilt.   The structures were evidently of a somewhat temporary character.

When one seeks to obtain land against the public by adverse possession of a part of a street, he should make out a clear case, and the possession should be of such a character, and under such circumstances, as to warrant the conclusion that the municipal authorities must be held chargeable with notice of the adverse possession and with acquiescence therein.   I do not think such a case has been made out by this record, and the decree should be reversed, and decree entered in this court for complainant.

The other Justices concurred.